# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF LOUISIANA

## EASTERN DISTRICT

| | |
|---|---|
| **ANNIE M. MCADAM,** on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**PROGRESS SOFTWARE CORPORATION,**<br><br>Defendant. | Case No. 2:23-cv-2295<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Annie M. McAdam ("Plaintiff"), brings this action on behalf of herself and all similarly situated persons, and alleges the following against Defendant Progress Software Corporation ("Defendant PSC"). These allegations are based on personal knowledge, investigation of counsel, publicly available materials and knowledge, information, and belief.

## <u>INTRODUCTION</u>

1.      Defendant PSC, which has its global headquarters in Burlington, Massachusetts, states on its website, they are a global software company offering a comprehensive "stack of products" and make "critical data and content more accessible and secure". Defendant PSC provides services to governments and corporations throughout the United States and around the world, including cloud hosting and secure file transfer services such as MOVEit file transfer and MOVEit cloud.

1

2.     Defendant PSC, failed to properly secure and safeguard personally identifiable information ("Private Information") including, but not limited to, Plaintiff's and Class Members' names, Social Security numbers, date of birth, driver's license numbers, demographic information, vehicle registration numbers and other financial information.

3.     As part of its normal business operations, Defendant PSC acquired, collected, utilized, and derived a benefit from Plaintiff's and Class Members' Private Information. As a result, owed and/or otherwise owed and/or otherwise assumed statutory, regulatory, contractual, and common law duties and obligations, including securing, protecting, safeguarding, and protecting Plaintiff's and Class Members' Private Information from the type of unauthorized access, disclosure, and theft in the data breach described below.

4.     Defendant PSC despite undertaking the duties described above to the Plaintiff and Class Members as it relates to and arises from its cloud hosting and secure file transfer services, Defendant PSC stored maintained, and/or hosted Plaintiff's and Class Members' Private Information on a database that was negligently and/or recklessly configured and maintained, as it contained security vulnerabilities that resulted in a breach of its network and systems. These vulnerabilities have existed since approximately 2021. As a result of the breach of the network and systems, unauthorized third-party cybercriminals gained access to and obtained Plaintiff's and Class Members' Private Information.

5.     On or about May 31, 2023, Defendant PSC posted a notice on its website stating it had discovered an SQL injection vulnerability related to its MOVEit Transfer and MOVEit Cloud file transfer services resulting from a breach in its network and systems that a well-known Russian cybergang, Clop may have been exploiting as far back as 2021 (the "Data Breach").[1] In

---

[1] See https://community.progress.com/s/article/MOVEit-Transfer-Critical-Vulnerability-31May2023 (last visited on June 26, 2023). *See also* Sean Lyngaas, Exclusive: US Government Agencies Hit in Global Cyberattack, CNN (June

Defendant's website notice, it states that the vulnerability in the MOVEit Transfer and Cloud web application resulting from the Data Breach "could lead to escalated privileges and potential unauthorized access to the environment."[2]

6.     Defendant PSC has not yet sent direct notice to those impacted by the Data Breach, though many of its customers, including the Louisiana Office of Motor Vehicles, have begun notifying individuals, including Plaintiffs and Class Members, that their Private Information has been compromised because of the PSC Data Breach.

7.     The Private Information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves. Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Plaintiff and/or Class Members' names, taking out loans in Plaintiff and/or Class Members' names, using Plaintiff and/or Class Members' names to obtain medical services, using Plaintiff and/or Class Members' information to obtain government benefits, filing fraudulent tax returns using Plaintiff and/or Class Members' information, obtaining driver's licenses in Plaintiff and/or Class Members' names but with another person's photograph and giving false information to police during an arrest.

8.     When government and corporate entities use Defendant's MOVEit secure file transfer services, they entrust Defendant with their confidential files (including the Private Information belonging to Plaintiff and Class Members), and Defendant willingly accepts responsibility for the secure maintenance of such files.

9.     There has been no assurance offered by Defendant PSC that it has adequately enhanced its data security practices sufficient to avoid a similar vulnerability in its MOVEit

15, 2023), https://www.cnn.com/2023/06/15/politics/us-government-hit-cyberattack/index.html.
[2] *Id.*

Transfer products and services in the future.

10.     Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

11.     Plaintiff brings this class action lawsuit to address Defendant PSC's inadequate safeguarding of her and Class Members' Private Information that Defendant PSC maintained through its MOVEit secure file transfer web application, and its failure to provide timely and adequate notice to Plaintiff and Class Members of what type of information was accessed, and that such information was subject to unauthorized access by cybercriminals.

12.     The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Defendant PSC, and thus Defendant PSC was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to attack.

13.     Upon information and belief, Defendant PSC failed to both properly monitor and properly implement data security practices with regard to the computer network and systems that housed the Private Information. Had Defendant PSC properly monitored its networks, it would have prevented the Breach or discovered the Breach sooner.

14.     Plaintiff's and Class Members' identities are now at risk of being stolen because of Defendant PSC's negligent conduct as the Private Information that PSC collected and maintained is now in the hands of data thieves and other unauthorized third parties.

15.     Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

4

## I.   PARTIES

16.     Plaintiff Annie McAdam is, and at all times mentioned herein was, an individual citizen of the State of Louisiana.

17.     Defendant PSC is a not for profit corporation organized under the laws of the State of Delaware with its principal place of business located at 15 Wayside Road, Suite 4, Burlington, Massachusetts 01803. Service of process is proper on Corporation Service Company as agent located at 84 State Street, Boston, Massachusetts 02109.

## II.   JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members exceeds 100, many of whom have different citizenship from Defendant PSC. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

19.     This Court has jurisdiction over Defendant PSC because Defendant conducts substantial business in this District.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District and Defendant PSC has harmed Plaintiff and Class Members residing in this District.

## III.   FACTUAL ALLEGATIONS

### A.   PSC's Business and Collection of Plaintiff's and Class Members' Private Information

21.     Defendant PSC, which is based in Burlington, Massachusetts, is a software company offering a wide range of products and services to government agencies and corporate entities across the United States and around the world, including cloud hosting and secure file transfer services such as MOVEit file transfer and MOVEit cloud.

22.     MOVEit is a "[m]anged File Transfer and automation software that guarantees the security of sensitive files both at-rest and in transit, ensures reliable business processes and addresses data security compliance requirements.[3]

23.     As a condition of receiving secure file transfer services, Defendant PSC requires that its government and corporate customers entrust it with highly sensitive Private Information belonging to individuals like Plaintiff and the Class Members.

24.     Because of the highly sensitive nature of the Private Information that Defendant PSC acquires, stores, and maintains on its network, Defendant PSC, "guarantees the security of sensitive files,"[4] promises to, among other things, to: keep customers' files private; comply with industry standards related to data security and the maintenance of its customers' files and the Private Information contained therein; only use and release highly sensitive information stored on its servers for business purposes and reasons that relate to the services it provides; and provide adequate notice to individuals if their Private Information is disclosed without authorization.

25.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant PSC assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

26.     Plaintiff and Class Members relied on Defendant PSC to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this information, which Defendant failed to do.

**B.  The Data Breach and PSC's Inadequate Notice to Plaintiffs and Class Members**

27.     Upon information and belief, Defendant PSC maintained Plaintiff's and Class

---

[3] Progress Brochure, available at https://d117h1jjiq768j.cloudfront.net/docs/default-source/default-document-library/progress-corporate-brochure-2023-rgb.pdf?sfvrsn=a0b1f671_3 (last viewed June 26, 2023).
[4] *Id.*

Members' Private Information on a network that was negligently secured or maintained, which allowed the unauthorized cybercriminals to access and infiltrate a cache of highly sensitive Private Information through the Data Breach, including but not limited to, Social Security numbers, financial information, and driver's licenses.

28.    Defendant PSC had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

29.    As stated above, Defendant PSC states in its product listings, it expressly "guarantees the security of sensitive files both at-rest and in transit" on its MOVEit software.

30.    Plaintiff and Class Members permitted their Private Information to be provided to Defendant PSC with the reasonable expectation and understanding that Defendant PSC would comply with its obligations to keep such Private Information confidential and secure from unauthorized access and to provide timely notice to Plaintiff and Class Members of any security breaches.

31.    Defendant PSC's data security obligations were particularly important given the substantial increase in cyberattacks in recent years, including recent similar attacks against secure file transfer companies like Accellion and Fortra carried out by the same Russian cyber gang, Clop.[5]

32.    Thus, because of the type of data and Private Information maintained, Defendant PSC knew or should have known that its electronic records would be targeted by unauthorized

---

[5] *See* https://www.bleepingcomputer.com/news/security/global-accellion-data-breaches-linked-to-clop-ransomware-gang/ (last visited on June 26, 2023); *see also* https://www.bleepingcomputer.com/news/security/fortra-shares-findings-on-goanywhere-mft-zero-day-attacks/ (last visited on June 26, 2023).

cybercriminals.

### C. **DEFENDANT PSC Failed to Comply with FTC Guidelines**

33.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

34.     In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

35.     The FTC further recommends that companies not maintain personally identifiable information ("PII") longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

36.     The FTC has brought enforcement actions against businesses for failing to

adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

37.    As evidenced by the Data Breach, Defendant PSC failed to properly implement basic data security practices. Defendant PSC's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

38.    Defendant PSC was at all times fully aware of its obligation to protect the Private Information of Plaintiff and Class Members yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**D.   Defendant PSC Failed to Comply with Industry Standards**

39.    At all relevant times Defendant PSC knew or reasonably should have known, of the importance of safeguarding the Plaintiff's and Class Members' Private Information and the foreseeable consequences that would occur if Defendant PSC's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members because of a breach.

40.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

41.    Some industry best practices that should be implemented by businesses like Defendant PSC include but are not limited to educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access

sensitive data. As evidenced by the Data Breach, Defendant PSC failed to follow some or all of these industry best practices.

42.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff and customers regarding these points. As evidenced by the Data Breach, Defendant PSC failed to follow these cybersecurity best practices.

43.     Defendant PSC failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

44.     Defendant PSC failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**E.   <u>Defendant PSC Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information</u>**

45.     In addition to its obligations under federal and state laws, Defendant PSC owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant PSC owed a duty to Plaintiff and Class Members to provide reasonable security, including complying with industry standards and requirements, training for its staff, and ensuring that its computer systems,

networks, and protocols adequately protected the Private Information of Plaintiff and Class Members.

46.     Defendant PSC breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant PSC's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.  Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

    b.  Failing to adequately protect customers' Private Information;

    c.  Failing to properly monitor its own data security systems for existing intrusions;

    d.  Failing to sufficiently train its employees regarding the proper handling of its customers' files containing Private Information;

    e.  Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

    f.  Failing to adhere to industry standards for cybersecurity as discussed above; and

    g.  Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

47.     Defendant PSC negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network, systems, and servers which contained unsecured and unencrypted Private Information.

48.     Had Defendant PSC remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private

Information.

49.     Accordingly, Plaintiff's and Class Members' lives were severely damaged and disrupted. Additionally, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant PSC.

**F.    Defendant PSC Should Have Known that Cybercriminals Target PII to Carry Out Fraud and Identity Theft**

50.     The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[6] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

51.     Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identify thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

52.     Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a

---

[6] FTC Information Injury Workshop, BE and BCP Staff Perspective, Federal Trade Commission, (October 2018), available at https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on June 26, 2023).

data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

53.     In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

54.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

55.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[7] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

---

[7] See IdentityTheft.gov, Federal Trade Commission, available at https://www.identitytheft.gov/#/Steps (last visited June 26, 2023).

56.     Identity thieves can also use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

57.     PII is data that can be used to detect a specific individual. PII is a valuable property right. Its value is axiomatic, considering the value of big data in corporate America and the consequences of cyber thefts (which include heavy prison sentences). Even this obvious risk-to-reward analysis illustrates beyond doubt that PII has considerable market value.

58.     The U.S. Attorney General stated in 2020 that consumers' sensitive personal information commonly stolen in data breaches "has economic value."[8] The increase in cyberattacks, and attendant risk of future attacks, was widely known and completely foreseeable to the public and to anyone in Defendants PSC's industry, including Defendant PSC, who had already experienced a recent breach.

59.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[9] Experian reports that a stolen credit or debit card number can

---

[8]  See Attorney General William P. Barr Announces Indictment of Four Members of China's Military for Hacking into Equifax, U.S. Dep't of Justice, Feb. 10, 2020, available at https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-fourmembers-china-s-military (last visited on June 26, 2023).
[9] Your personal data is for sale on the dark web. Here's how much it costs, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited on June

sell for $5 to $110 on the dark web and that the "*fullz*" (a term criminals who steal credit card information use to refer to a complete set of information on a fraud victim) sold for $30 in 2017.[10]

60.    Furthermore, even information such as names, email addresses and phone numbers, can have value to a hacker.  Beyond things like spamming customers, or launching phishing attacks using their names and emails, hackers, *inter alia*, can combine this information with other hacked data to build a more complete picture of an individual. It is often this type of piecing together of a puzzle that allows hackers to successfully carry out phishing attacks or social engineering attacks. This is reflected in recent reports, which warn that "[e]mail addresses are extremely valuable to threat actors who use them as part of their threat campaigns to compromise accounts and send phishing emails."[11]

61.    The Dark Web Price Index of 2022, published by PrivacyAffairs[12] shows how valuable just email addresses alone can be, even when not associated with a financial account:

| Email Database Dumps | Avg. Price USD (2022) |
| --- | --- |
| 10,000,000 USA email addresses | $120 |
| 600,000 New Zealand email addresses | $110 |
| 2,400,000 million Canada email addresses | $100 |

62.    Beyond using email addresses for hacking, the sale of a batch of illegally obtained email addresses can lead to increased spam emails. If an email address is swamped with spam, that address may become cumbersome or impossible to use, making it less valuable to its owner.

63.    Likewise, the value of PII is increasingly evident in our digital economy. Many companies including Defendant PSC collect PII for purposes of data analytics and marketing.

---

26, 2023).

[10] Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian, Dec. 6, 2017, available at: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the- dark-web/ (last visited on June 26, 2023).

[11] See https://www.magicspam.com/blog/dark-web-price-index-the-cost-of-email-data/ (last visited on June 26, 2023).

[12] See https://www.privacyaffairs.com/dark-web-price-index-2022/ (last visited on June 26, 2023).

These companies, collect it to better target customers, and shares it with third parties for similar purposes.[13]

64.     One author has noted: "Due, in part, to the use of PII in marketing decisions, commentators are conceptualizing PII as a commodity. Individual data points have concrete value, which can be traded on what is becoming a burgeoning market for PII."[14]

65.     Consumers also recognize the value of their personal information and offer it in exchange for goods and services. The value of PII can be derived not only by a price at which consumers or hackers actually seek to sell it, but rather by the economic benefit consumers derive from being able to use it and control the use of it.

66.     A consumer's ability to use their PII is encumbered when their identity or credit profile is infected by misuse or fraud. For example, a consumer with false or conflicting information on their credit report may be denied credit. Also, a consumer may be unable to open an electronic account where their email address is already associated with another user. In this sense, among others, the theft of PII in the Data Breach led to a diminution in value of the PII.

67.     Data breaches, like that at issue here, damage consumers by interfering with their fiscal autonomy. Any past and potential future misuse of Plaintiff's and the Class Members' PII impairs their ability to participate in the economic marketplace.

---

[13] See https://robinhood.com/us/en/support/articles/privacy-policy/ (last visited on June 26, 2023).
[14] See John T. Soma, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ('PII') Equals the "Value" of Financial Assets, 15 Rich. J. L. & Tech. 11, 14 (2009).

68.     A study by the Identity Theft Resource Center[15] shows the multitude of harms caused by fraudulent use of PII:

| Americans' Expenses/disruptions as a result of criminal activity in their name (2021) | |
| --- | --- |
| I was unable to pay bills. | 66.7% |
| I borrowed money from family or friends. | 28.2% |
| I had to use my savings to pay for expenses. | 33.3% |
| I was turned down for credit or loans (such as student, mortgage, or personal). | 83.3% |
| I lost my home/place of residence. | 11.1% |
| I was unable to rent an apartment or find housing. | 83.3% |
| This incident lead to problems with family members? | 32.4% |
| I felt a sense of powerlessness and helplessness | 54.4% |
| Debt collectors or collections departments contacted me (or continue to contact me). | 100.0% |
| I lost time at work. | 37.5% |
| I was generally inconvenienced. | 87.5% |
| Source: Identity Theft Resource Center | Idtheftcenter.org |

69.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or personal financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[16]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

---

[15] 2021 ITRC Consumer Aftermath Responses Non-Pandemic Related, available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.idtheftcenter.org/wp-content/uploads/2021/05/2021-ITRC-Consumer-Aftermath-Responses-Non-Pandemic-Related.pdf (last visited June 26, 2023).

[16] 14 Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown, GAO (June 2007), available at https://www.gao.gov/assets/270/262904.html (last visited June 26, 2023).

70.     PII is such a valuable commodity to identify thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

71.     As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

**G.   Plaintiff's and Class Members' Damages**

72.     Plaintiff is a resident of the State of Louisiana and has been issued a Louisiana Driver's License and/or identification card through the Louisiana Department of Motor Vehicles, a customer of Defendant PSC utilizing Defendant PSC's secure file transfer products and services.

73.     On or about June 2023, Plaintiff received notice of the Data Breach from the Louisiana Department of Motor Vehicles and/or publicly available information regarding the Data Breach alerting her of the Data Breach and that her Private Information was at risk. Defendant PSC has failed to send direct notice of the Data Breach to those impacted. Nor has it provided any remedial services, such as free credit monitoring, to those affected by the Data Breach.

74.     Plaintiff has suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach.

75.     Plaintiff would not have permitted her Private Information to be provided by the Louisiana Department of Motor Vehicles to Defendant PSC had Defendant PSC timely disclosed that its file transfer servers lacked adequate data security to safeguard its customers' files and the highly sensitive personal information therein from theft, and that those servers were subject to a data breach.

76.     Plaintiff suffered actual injury in the form of having her Private Information compromised and/or stolen as a result of the Data Breach.

77.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information – a form of intangible property that Plaintiff and Class Members entrusted to Defendant PSC.

78.     Plaintiff and Class Members suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by their Private Information being placed in the hands of criminals.

79.     Plaintiff has a continuing interest in ensuring that her Private Information, which remains on Defendant PSC's MOVEit servers and stored within Defendant PSC's systems, is protected and safeguarded from future breaches.

80.     As a result of the Data Breach, Plaintiff has already made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to, researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching long-term credit monitoring options she will now need to use. Plaintiff has spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

81.     As a result of the Data Breach, Plaintiff has suffered anxiety as a result of the release of her Private Information to cybercriminals, which Private Information she believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of committing cyber and other crimes against her. Plaintiff is concerned about her increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach will have on her life.

82.     Plaintiff and Class members also suffered actual injury as a result of the Data Breach in the form of (a) damage to and diminution in the value of their Private Information, a form of

property that Defendant PSC obtained from them; (b) violation of their privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud they now face.

83.     As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach as do Class Members.

84.     In sum, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

85.     Plaintiff and Class Members entrusted their Private Information to Defendant PSC's customers.

86.     Plaintiff's and Class Members' Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant PSC's inadequate data security practices.

87.     As a direct and proximate result of Defendant PSC's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having loans opened in their names, tax returns filed in their names, utility accounts opened in their names, credit card accounts opened in their names, and other forms of fraud and identity theft.

88.     Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

89.     The Private Information maintained by and stolen from Defendant PSC's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent

schemes against Plaintiff and Class Members.

90.      Additionally, as a direct and proximate result of Defendant PSC's conduct, Plaintiff and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

91.      Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

92.      Plaintiff and Class Members also suffered a loss of value of their Private Information when it was accessed, viewed, and acquired by Clop in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists.[17] In 2019, the data brokering industry was worth roughly $200 billion. In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker who in turn aggregates the information and provides it to other companies.[18] Consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[19]

93.      As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information

---

[17] See Insider Trends, https://datacoup.com/ (last visited on June 26, 2023).
[18] How is digi.me pioneering a new approach to personal privacy?, https://www.insider-trends.com/how-is-digi-me-pioneering-a-new-approach-to-personal-privacy/ (last visited on June 26, 2023).
[19] Frequently Asked Questions, Nielsen Computer & Mobile Panel, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited on June 26, 2023).

happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and Class Members, thereby causing additional loss of value.

94.     Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

    a.   Monitoring for and discovering fraudulent charges;

    b.   Canceling and reissuing credit and debit cards;

    c.   Addressing their inability to withdraw funds linked to compromised accounts;

    d.   Taking trips to banks and waiting in line to obtain funds held in limited accounts;

    e.   Spending time on the phone with or at a financial institution to dispute fraudulent charges;

    f.   Contacting financial institutions and closing or modifying financial accounts;

    g.   Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

    h.   Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

       i.   Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

95.     Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendant PSC, is protected from future additional breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password protected, and that such data is properly encrypted.

96.     As a direct and proximate result of Defendant PSC's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## IV.    CLASS ACTION ALLEGATIONS

97.     Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4).

98.     Specifically, Plaintiff proposes the following Nationwide Class (referred to herein as the "Class" or "Class Members"), subject to amendment as appropriate:

**Nationwide Class**

All persons in the United States whose Private Information was accessed, acquired or compromised as a result of the Data Breach as a result of the exploitation of Progress Software Corporation's MOVEit Transfer and MOVEit Cloud vulnerability. (the "Class").

99.     Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which Defendant PSC has a controlling interest, as well as Defendant PSC's officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any

Judge to whom this case is assigned as well as their judicial staff and immediate family members.

100.    Plaintiff reserves the right to modify or amend the definition of the proposed Nationwide Class, as well as add subclasses, before the Court determines whether certification is appropriate.

101.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

102.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class likely consists of millions of individuals whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant PSC's records, Class Members' records, publication notice, self-identification, and other means. Fed. R. Civ. P. 23(a)(1).

103.    <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. Fed. R. Civ. P. 23(a)(2) and (b)(3). These common questions of law and fact include, without limitation:

    a.   Whether Defendant PSC engaged in the conduct alleged herein;

    b.   When did Defendant PSC learn of the Data Breach;

    c.   Whether Defendant PSC's response to the Data Breach was adequate;

    d.   Whether Defendant PSC unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

    e.   Whether Defendant PSC failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

    f.   Whether Defendant PSC's data security practices related to its secure file

transfer services prior to and during the Data Breach complied with applicable data security laws and regulations;

g.   Whether Defendant PSC's data security practices related to its secure file transfer services prior to and during the Data Breach were consistent with industry standards;

h.   Whether Defendant PSC owed a duty to Plaintiff and Class Members to safeguard their Private Information;

i.   Whether Defendant PSC breached its duty to Plaintiff and Class Members to safeguard their Private Information;

j.   Whether hackers obtained Plaintiff and Class Members' Private Information via the Data Breach;

k.   Whether Defendant PSC had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

l.   Whether PSC breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

m.   Whether Defendant PSC knew or should have known that its data security systems and monitoring processes, as such, related to its secure file transfer services were deficient;

n.   What damages Plaintiff and Class Members suffered as a result of Defendant PSC's misconduct;

o.   Whether Defendant PSC's conduct was negligent;

p.   Whether Defendant PSC's conduct was *per se* negligent;

q.   Whether Defendant PSC was unjustly enriched;

r.   Whether Plaintiff and Class Members are entitled to actual and/or statutory

damages;

s.  Whether Plaintiff and Class Members are entitled to credit or identity monitoring and monetary relief; and

t.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

104.  <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Fed. R. Civ. P. 23(a)(3).

105.  <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the other Class Members and the infringement of the rights and damages Plaintiff has suffered are typical of the other Class Members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Fed. R. Civ. P. 23(a)(4).

106.  <u>Predominance</u>. Defendant PSC has engaged in a common course of conduct toward Plaintiff and Class Members in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant PSC's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. Defendant PSC's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant PSC's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

107.    <u>Superiority</u>. Class litigation is an appropriate method for fair and efficient adjudication of the claims involved.  Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant PSC. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member. Fed. R. Civ. P. 23(b)(3).

108.    The nature of this action and the nature of the laws available to the Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant PSC would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonable consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent

results and would be unnecessary and duplicative litigation.

109.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). Defendant PSC has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

110.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether Defendant PSC owed a legal duty to Plaintiff and Class members to exercise due care in collecting, maintaining, using, and/or safeguarding their Private information;

b.    Whether Defendant PSC breached a legal duty to Plaintiff and Class members to exercise due care in collecting, maintaining, using and/or safeguarding their Private Information;

c.    Whether Defendant PSC failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.    Whether Defendant PSC adequately and accurately informed Plaintiff and Class members that their Private information had been compromised;

e.    Whether Defendant PSC failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f.    Whether Defendant PSC's data security practices related to its MOVEit Applications prior to and during the Data Breach complied with applicable data security laws and regulations;

g.    Whether Defendant PSC's data security practices related to its MOVEit Applications prior to and during the Data Breach were consistent with industry standards;

h.    Whether hackers obtained Class members' Private Information via the Data Breach;

i.    Whether Defendant PSC breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members; and

j.    Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant PSC's wrongful conduct.

111.    Finally, all members of the proposed Class are readily ascertainable. Defendant, PSC has access to the names and address and/or email addresses of Class Members affected by the Data Breach.

## V.    CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
**(On behalf of Plaintiff and the Nationwide Class)**

112.    Plaintiff restates and realleges all of the allegations stated above as if fully set forth herein.

113.    Defendant PSC knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Private Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

114.    Defendant PSC's duty also included a responsibility to implement processes by which it could detect and analyze a vulnerability of its systems quickly and to give prompt notice to those affected in the case of a cyberattack.

115.    Defendant PSC knew or should have known of the risks inherent in collecting the

29

Private Information of Plaintiffs and Class Members and the importance of adequate security. Defendant PSC was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

116.    Defendant PSC owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. PSC's duties included, but were not limited to, the following:

   a.   To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

   b.   To protect customers' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

   c.   To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

   d.   To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to the FTCA;

   e.   To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

   f.   To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

117.    Defendant PSC's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

118.    Defendant PSC's duty also arose because Defendant was bound by industry standards to protect its customers' confidential Private Information.

119.    Plaintiff and Class Members were foreseeable victims of any inadequate security

practices on the part of Defendant PSC, and Defendant PSC owed Plaintiff and the Class Members a duty of care to not subject them to an unreasonable risk of harm.

120.   Defendant PSC, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant PSC's possession.

121.   Defendant PSC, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

122.   Defendant PSC, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

123.   Defendant PSC breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff and Class Members' Private Information. The specific negligent acts and omissions committed by Defendant PSC include, but are not limited to, the following:

   a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff and Class Members' Private Information;

   b.  Failing to adequately monitor the security of its networks and systems;

   c.  Failing to periodically ensure that its email system maintained reasonable data security safeguards;

   d.  Allowing unauthorized access to Plaintiff and Class Members' Private Information;

   e.  Failing to comply with the FTCA;

   f.  Failing to detect in a timely manner that Plaintiff and Class Members' Private Information had been compromised; and

g.  Failing to timely notify Plaintiff and Class Members about the Data Breach so that
they could take appropriate steps to mitigate the potential for identity theft and other
damages.

124.  Defendant PSC acted with reckless disregard for the rights of Plaintiff and Class
Members by failing to provide prompt and adequate individual notice of the Data Breach such that
Plaintiff and Class Members could take measures to protect themselves from damages caused by
the fraudulent use of the Private Information compromised in the Data Breach.

125.  Defendant PSC had a special relationship with Plaintiff and Class Members.
Plaintiff and Class Members' willingness to turn over their Private Information to Defendant
PSC was predicated on the understanding that Defendant PSC would take adequate security
precautions to protect it. Moreover, only Defendant PSC had the ability to protect its systems (and
the Private Information stored thereon) from attack.

126.  Defendant PSC's breach of duties owed to Plaintiff and Class Members caused
Plaintiff's and Class Members' Private Information to be compromised, exfiltrated, and misused,
as alleged herein.

127.  As a result of Defendant PSC's ongoing failure to notify Plaintiff and Class
Members regarding exactly what Private Information has been compromised, Plaintiff and Class
Members have been unable to take the necessary precautions to prevent future fraud and mitigate
damages.

128.  Defendant PSC's breaches of duty also caused a substantial, imminent risk to
Plaintiff and Class Members of identity theft, loss of control over their Private Information, and/or
loss of time and money to monitor their accounts for fraud.

129.  As a result of Defendant PSC's negligence in breach of its duties owed to Plaintiffs
and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their

Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

130.    Defendant PSC also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

131.    As a direct and proximate result of Defendant PSC's negligent conduct, Plaintiff and Class Members have suffered damages and are at current imminent and ongoing risk of further harm including the risk of identity theft, and Plaintiff and Class Members sustained incidental, compensatory and consequential damages including: financial "out of pocket" costs incurred mitigating the materialized risk of imminent threat of identity theft, loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk, financial "out of pocket" costs incurred due to actual identity theft, loss of time incurred due to actual identity theft, loss of time due to increased spam and targeted marketing emails, diminution of value of Private Information, future costs of identity theft monitoring, and continued risk to their Private Information, which remains in Defendant PSC's control, and which is subject to further breaches, so long as Defendant PSC fails to undertake appropriate and adequate measures to protect Plaintiff and Class members' Private Information.

132.    The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

133.    Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

134.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant PSC to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit

monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT II
### BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
### (On behalf of Plaintiff and the Nationwide Class)

135.    Plaintiff and Class Members restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

136.    Upon information and belief, Defendant PSC entered into virtually identical contracts with its government and corporate entity customers to provide secure file transfer services to them, which services included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be entrusted to it.

137.    Such contracts were made expressly for the benefit of Plaintiff and Class Members, as it was their Private Information that Defendant PSC agreed to receive and protect through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiff and the Class Members was the direct and primary objective of the contracting parties and Plaintiff and Class Members were direct and express beneficiaries of such contracts.

138.    Defendant PSC knew or should have known that if it were to breach these contracts with its customers, Plaintiff and the Class Members, would be harmed.

139.    Defendant PSC breached its contracts with its customers and, as a result, Plaintiff and Class Members were harmed by this Data Breach when Defendant PSC failed to use reasonable data security measures to adequately secure Plaintiff's and Class Members' Private Information that could have prevented the Data Breach.

140.    As a direct and proximate result of Defendant PSC's breach, Plaintiff and Class Members are a current and ongoing risk of identity theft, and Plaintiff and the Class Members sustained incidental, compensatory and consequential damages including: financial "out of pocket" costs incurred mitigating the materialized risk of imminent threat of identity theft, loss of

time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk, financial "out of pocket" costs incurred due to actual identity theft, loss of time incurred due to actual identity theft, loss of time due to increased spam and targeted marketing emails, diminution of value of Private Information, future costs of identity theft monitoring, and continued risk to their Private Information, which remains in Defendant PSC's control, and which is subject to further breaches, so long as Defendant PSC fails to undertake appropriate and adequate measures to protect Plaintiff and Class members' Private Information.

141.    As foreseen, Plaintiff and Class Members were harmed by PSC's failure to use reasonable data security measures to securely store and transfer the files containing their Private Information, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information.

142.    Accordingly, Plaintiff and the Class are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

<div align="center">

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

</div>

143.    Plaintiff and Class Members restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

144.    Plaintiff and Class Members conferred a monetary benefit on Defendant PSC by providing Defendant PSC with their valuable Private Information through the Louisiana Office of Motor Vehicles and Defendant PSC's other government, corporate entity, and other customers.

145.    Defendant PSC enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information, which cost savings increased the profitability of the services.

146.    Upon information and belief, Defendant PSC funds its data security measures entirely from its general revenue, including from payments made to it by its government, corporate entity, and other customers.

147.    As such, a portion of the payments made to Defendant PSC by its customers, which payments would not be possible without Plaintiff and Class Members turning over their Private Information, is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendant PSC.

148.    Defendant PSC has retained the benefits of its unlawful conduct, including the amounts of payments received from its customers that should have been used for adequate cybersecurity practices that it failed to provide.

149.    Defendant PSC knew that Plaintiff and Class Members conferred a benefit upon it, which Defendant PSC accepted. Defendant PSC profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff's and Class Members' Private Information and prevented the Data Breach.

150.    If Plaintiff and Class Members had known that Defendant PSC had not adequately secured their Private Information, they would not have agreed to provide such Private Information.

151.    Due to Defendant PSC's conduct alleged herein, and under the principles of equity and good conscience, Defendant PSC should not be permitted to retain the monetary value of the benefits belonging to Plaintiff and Class Members because Defendant PSC failed to implement appropriate data management and security measures that are mandated by industry standards.  It would be unjust and inequitable for Defendant PSC to be permitted to retain the benefit of its wrongful conduct.

152.    As a direct and proximate result of Defendant PSC's conduct, Plaintiff and Class Members have suffered and are at a substantial and continued and ongoing risk of suffering injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant PSC's possession and is subject to further unauthorized disclosures so long as Defendant PSC fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; (vii) diminution of value of Private Information and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised because of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

153.    Plaintiffs and Class Members are entitled to full refunds, restitution, and/or compensatory, consequential, and nominal damages from Defendant PSC and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant PSC from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

154.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT IV**
**NEGLIGENCE PER SE**
**(On behalf of Plaintiff and the Nationwide Class)**

155.     Plaintiff and Class Members repeat and re-allege every allegation in the preceding

paragraphs as if fully set forth herein.

156.     Pursuant to Federal Trade Commission, 15 U.S.C. § 45, Defendant PSC had a duty

to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's

and Class Members' Private Information.

157.     Defendant PSC breached its duties to Plaintiff and Class Members under the FTC

Act by failing to provide fair, reasonable, or adequate computer systems and data security practices

to safeguard Plaintiff's and Class Members' Private Information.

158.     Defendant PSC's failure to comply with applicable laws and regulations constitutes

negligence per se.

159.     But for Defendant PSC's wrongful and negligent breach of its duties owed to

Plaintiff and Class Members, Plaintiff and Class members would not have been injured.

160.     The injury and harm suffered by Plaintiff and Class Members was the reasonably

foreseeable result of Defendant PSC's breach of its duties. Defendant PSC knew or should have

known that it was failing to meet its duties, and that Defendant PSC's breach would cause Plaintiff

and Class Members to experience the foreseeable harms associated with the exposure of their

Private Information.

161.     As a direct and proximate result of Defendant PSC's negligence, Plaintiff and Class

Members are at a current and ongoing risk of identity theft, and Plaintiff and Class members

sustained incidental, compensatory and consequential damages including: financial "out of

pocket" costs incurred mitigating the materialized risk of imminent threat of identity theft, loss of

time and loss of productivity incurred mitigating the materialized risk and imminent threat of

identity theft risk, financial "out of pocket" costs incurred due to actual identity theft, loss of time incurred due to actual identity theft, loss of time due to increased spam and targeted marketing emails, diminution of value of Private Information, future costs of identity theft monitoring, and continued risk to their Private Information, which remains in Defendant PSC's control, and which is subject to further breaches, so long as Defendant PSC fails to undertake appropriate and adequate measures to protect Plaintiff and Class members' Private Information.

162.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

<p style="text-align:center"><strong><u>COUNT V</u></strong><br><strong>DECLARATORY AND INJUNCTIVE RELIEF</strong><br><strong>(On behalf of Plaintiff and the Nationwide Class)</strong></p>

163.    Plaintiff and Class Members restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

164.    Plaintiff and Class Members pursue this claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

165.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those here, that are tortious and violate the terms of the federal statutes, common law, and industry standards described in this Complaint.

166.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant PSC's present and prospective common law and other duties to reasonably safeguard Plaintiff's and Class Members' Private Information, which Defendant PSC still possesses and whether Defendant PSC is currently maintaining data security measures adequate to protect Plaintiff and Class Members from future data breaches that compromise their Private Information.

Plaintiff and Class Members remain at imminent risk that further compromises of their Private Information will occur in the future.

167.    The Court should also issue prospective injunctive relief requiring Defendant PSC to employ adequate security practices consistent with law and industry standards to protect Plaintiff's and Class Members' Private Information.

168.    To Plaintiff's knowledge, Defendant PSC has not made an announcement that it has changed its data or security practices related to the Private Information.

169.    Defendant PSC owes a duty of care to Plaintiff and Class Members, which required and continues to require it to adequately secure Plaintiff's and Class Members' Private Information.

170.    Plaintiff and Class Members allege that Defendant PSC's data security measures remain inadequate. Furthermore, Plaintiff and Class Members continue to suffer injury as a result of the access and compromise of their Private Information and the risk remains that further compromises of their Private Information will occur in the future.

171.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

      a.    Defendant PSC owes a legal duty to secure its customers' files storing the Private Information belonging to Plaintiff and Class Members, and to timely notify Plaintiff and Class Members of the Data Breach and future data breaches under the common law and Section 5 of the FTCA;

      b.    Defendant PSC's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect customers' files that store Plaintiff's and Class Members' Private Information; and

    c.   Defendant PSC continues to breach this legal duty by failing to employ reasonable measures to secure customers' Private Information.

172.    This Court should also issue corresponding prospective injunctive relief requiring Defendant PSC to employ adequate security protocols consistent with legal and industry standards to protect customers' Private Information, including the following:

    a.   Order Defendant PSC to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

    b.   Order that, to comply with Defendant PSC's explicit or implicit contractual obligations and duties of care, Defendant PSC must implement and maintain reasonable security measures, including, but not limited to:

    c.   engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant PSC's systems on a periodic basis, and ordering Defendant PSC to promptly correct any problems or issues detected by such third-party security auditors;

    d.   engaging third-party security auditors and internal personnel to run automated security monitoring;

    e.   auditing, testing, and training its security personnel regarding any new or modified procedures;

    f.   segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant PSC's systems;

    g.   conducting regular database scanning and security checks and assessments;

    h.   routinely and continually conducting internal training and education to inform

internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

i. meaningfully educating its customers and all individuals impacted by the Data Breach about the threats they face with regard to the security of their Private Information, as well as the steps Defendant PSC's customers should take to protect Plaintiff's and Class Members' Private Information going forward.

173. If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Defendant PSC. The risk of another such  breach is real, immediate, and substantial. If another breach occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

174. The hardship to Plaintiff and the Class Members if an injunction does not issue exceeds the hardship to Defendant PSC if an injunction is issued. Plaintiff and Class Members will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant PSC's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant PSC has a pre-existing legal obligation to employ such measures.

175. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendant PSC, thus preventing future injury to Plaintiffs and Class Members whose Private Information would be further compromised.

## VI.      PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seek the following relief:

a.  An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representatives of the Nationwide Class requested herein;

b.  Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including but not limited to, actual, consequential, compensatory, statutory and nominal damages, equitable relief, restitution, disgorgement, and statutory costs;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order instructing Defendant PSC to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e.  An order requiring Defendant PSC to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

## VII.    <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all triable issues.

DATED:  June 30, 2023

<div style="margin-left:45%">

Respectfully submitted,

<u>/s/ *James R. Dugan*</u>
James R. Dugan, II (LA Bar #24785)
David S. Scalia (LA Bar # 21369)
TerriAnne Benedetto (PA Bar #59378)
Glenn E. Mintzer (LA Bar #24170)
**THE DUGAN LAW FIRM, APLC**
365 Canal Street, Suite 1000
New Orleans, LA 70130
Telephone: (504) 648-0180
Facsimile: (504) 648-0181
*Counsel for Plaintiff and the Putative Class*

</div>